## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RIVERSIDE CONSTRUCTION | : | |
| MATERIALS, INC., CONSTRUCTRUAL | : | |
| DYNAMICS, INC., and SILVI | : | |
| CONCRETE PRODUCTS, INC., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. |
| | : | |
| vs. | : | |
| | : | |
| NEW JERSEY RE-INSURANCE | : | |
| COMPANY, | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiffs, Riverside Construction Materials, Inc., Constructural Dynamics, Inc., and Silvi Concrete Products, Inc., by their counsel, Fowler, Hirtzel, McNulty & Spaulding, LLC, file this Complaint against Defendant, New Jersey Re-Insurance Company.

1.      This lawsuit is an action for declaratory judgment and breach of contract against New Jersey Re-Insurance Company, because it refuses to defend and indemnify Plaintiffs in two personal-injury lawsuits filed against Plaintiffs in Pennsylvania state court.

2.      New Jersey Re-Insurance insured H. Liedtka Company, Inc., under a commercial auto insurance policy.

1

3.     The state-court lawsuits arise from an auto accident allegedly caused by H. Liedtka's driver while H. Liedtka was allegedly hauling materials under an agreement with Plaintiff, Riverside Construction Materials, Inc..

4.     Plaintiffs sought coverage under H. Liedtka's commercial auto insurance policy, but New Jersey Re-Insurance refused to defend or indemnify Plaintiffs in the state-court lawsuits.

5.     Further, New Jersey Re-Insurance is not paying Plaintiffs' legal expenses, did not appoint counsel to defend Plaintiffs, and did not otherwise assume Plaintiffs' defense as required by law.

6.     As a result, Plaintiffs are incurring costs and fees in defending the state-court lawsuits that New Jersey Re-Insurance must pay.

7.     Plaintiffs seek a judgment that New Jersey Re-Insurance must defend and indemnify them in the state-court lawsuits, and pay and reimburse Plaintiffs for the costs of defending the state-court lawsuits and filing this lawsuit, as well as for compensatory and punitive damages Plaintiffs sustained because of New Jersey Re-Insurance's wrongful conduct.

## PARTIES

8.     Plaintiff, Riverside Construction Materials, Inc., is a Pennsylvania corporation with its principal place of business at 335 Newbold Road, Fairless Hills, Pennsylvania.

9.     Plaintiff, Constructural Dynamics, Inc., is a Pennsylvania corporation with its principal place of business at 335 Newbold Road, Fairless Hills, Pennsylvania.

10.    Plaintiff, Silvi Concrete Products, Inc., is a Pennsylvania corporation with its principal place of business at 335 Newbold Road, Fairless Hills, PA 19153.

11.    Constructural Dynamics, Inc., and Silvi Concrete Products, Inc., are affiliated companies of Riverside Construction Materials, Inc.

12.    Defendant, New Jersey Re-Insurance Company, is a New Jersey insurance corporation with its principal place of business at 301 Sullivan Way, West Trenton, New Jersey.

13.    New Jersey Re-Insurance is part of the NJM Insurance Group.

14.    New Jersey Re-Insurance is authorized to write casualty insurance in Pennsylvania.

## JURISDICTION AND VENUE

15.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a), because:

  a.  All Plaintiffs are Pennsylvania citizens and all defendants are New Jersey citizens.

  b.  This lawsuit involves insurance coverage under a commercial auto insurance policy with coverage limits of $1,000,000 and underlying claims involve serious alleged injuries, meaning that the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

16.    This Court has specific personal jurisdiction over New Jersey Re-Insurance, because its wrongful conduct in refusing to defend and indemnify Plaintiffs occurred, and is occurring, in Pennsylvania.

17.    The Court also has specific personal jurisdiction over New Jersey Re-Insurance, because the claims that are the subject of the state-court lawsuits and this insurance-coverage dispute arose in Pennsylvania.

18.    Further, by obtaining a certificate of authority to conduct its insurance business in Pennsylvania, New Jersey Re-Insurance voluntarily subjected itself to jurisdiction in Pennsylvania.

4

19.     Venue is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## BACKGROUND

20.     Plaintiffs, H. Liedka, and others are defendants in two lawsuits seeking money damages for personal injuries pending in the Court of Common Pleas of Philadelphia County, Pennsylvania (collectively, the "Underlying Actions"):

      a.  *Haines, et al. v. H Liedtka Co., et al.*, No. 250203398 A copy of the third amended complaint in the *Haines* action, the operative pleading, is **Exhibit "A"** and is incorporated under Fed. R. Civ. P. 10(c).

      b.  *Selman v. Baez, et al.*, No. 250503058 A copy of the amended complaint in the *Selman* action, the operative pleading, is **Exhibit "B"** and is incorporated under Fed. R. Civ. P. 10(c).

21.     The Underlying Actions have been consolidated for discovery and trial.

## The Underlying Actions seek money damages for bodily injury caused by an accident involving an auto.

22.     The Underlying Actions arise from a February 7, 2025 motor vehicle accident that happened on the Trenton-Morrisville Toll Bridge, which carries U.S.

5

Route 1 over the Delaware River between Morrisville, Pennsylvania and Trenton, New Jersey.

23.    According to the complaints in the Underlying Action, the accident happened on the Pennsylvania side of the bridge in Morrisville Borough. *See* Ex. A. ¶ 30; Ex. B. ¶ 16.

24.    According to the complaints in the Underlying Action, the accident involved at least four vehicles:

> a.  A dump truck owned or leased by H. Liedtka and operated by Francisco Baez. Ex. A. ¶ 25.
>
> b.  A pickup truck operated by Robert Haines. Ex. A. ¶ 42.
>
> c.  A truck tractor towing a car trailer owned  by Capo Transportation, Inc., and operated by Sherbek Fayzullaev, which was transporting an Aston Martin automobile. Ex. A. ¶ 26; Ex. B. ¶¶ 18-19.
>
> d.  A passenger car operated by Asha Selman. Ex. B. ¶ 16.

25.    The complainants allege that H. Liedtka owned or leased a dump truck that was being driven by Francisco Baez in the course of his employment with H. Liedtka. Ex. A. ¶ 25; Ex. B. ¶ 20.

26.    It is alleged that the H. Liedtka dump truck was hauling a load of treated roll-up salt or other loose aggregate materials that was loaded at Riverside Industrial Complex in Bristol, Pennsylvania. Ex. A. ¶ 32; Ex. B. ¶¶ 22, 31.

27.     It is alleged that Baez was operating the H. Liedtka dump truck on U.S. Route 1 heading to New Jersey to deliver materials on behalf of Plaintiffs, and that Plaintiffs controlled the means and methods of the delivery. Ex. A. ¶ 41; Ex. B. ¶ 29.

28.     It is alleged that Baez failed to observe traffic conditions in front of him, and failed to stop or slow for traffic in violation of state and federal laws and regulations. Ex. A. ¶¶ 43-44; Ex. B. ¶ 33.

29.     It is alleged that Baez engaged in an evasive maneuver to the right, striking a barrier. Ex. B. ¶ 32.

30.     It is alleged that, as a result Baez caused the H. Liedtka dump truck to strike the rear of a pickup truck operated by Robert Haines, which in turn was propelled into the Capo Transportation car trailer. Ex. A. ¶¶ 45-46.

31.     Baez's dump truck also allegedly struck the rear of Selman's car, pushing it into another vehicle. Ex. B. ¶¶ 33-34.

32.     It is further alleged that H. Liedtka and Baez lacked authority to engage in interstate, for-hire operations. Ex. A. ¶¶ 57-62; Ex. B. ¶ 35.

33.     It is alleged that H. Liedtka and Baez were authorized agents of Plaintiffs. Ex. A. ¶¶ 62, 68, 72, 73; Ex. B. ¶¶ 27-31, 40.

34.     It is specifically alleged that Plaintiffs are vicariously liable for the acts or omissions of Baez. Ex. A. ¶¶ 141-47; Ex. B. ¶ 109-15.

7

35.     Robert Haines alleges that he suffered serious and permanent injuries, including orbital, skull, and facial factures; a severed eye; blindness; coma; concussion; traumatic brain injury; back and spinal fractures; severe soft tissue hematomas; weakness; tingling, and numbness in upper extremities; sleeplessness; anxiety; depression; and other injuries. Ex. A. ¶ 75.

36.     Robert Haines seeks money damages for past and future medical expenses, loss of income and earning capacity, diminution of life's pleasures, and pain and suffering. Ex. A. ¶¶ 76-80.

37.     Joann Haines, Robert Haines's wife, seeks damages for loss of consortium. Ex. A. ¶¶ 149-50.

38.     The Haineses seek compensatory and punitive damages in excess of $50,000.

39.     Asha Selman alleges that she suffered injuries including cervical herniations and radiculopathy, lumbar herniations and radiculopathy, and a right knee injury. Ex. B. ¶ 62.

40.     Selman seeks damages for past and future medical expenses, loss of earning capacity, and pain and suffering. Ex. B. ¶¶ 63-70.

41.     Selman seeks compensatory and punitive damages in excess of $50,000.

42.     Plaintiffs vigorously dispute the allegations of the complaints in the

Underlying Actions.

## The Independent Hauler Agreement requires H. Liedtka to indemnify, and obtain insurance for, Plaintiffs.

43.     H. Liedtka, Riverside Construction Materials, Inc., and other Silvi

entities, were parties to an Independent Hauler Agreement. The Independent

Hauler Agreement is **Exhibit "C"** and is incorporated under Fed. R. Civ. P. 10(c).

44.     Under the Independent Hauler Agreement, H. Liekda agreed to

furnish commercial motor vehicles and qualified drivers to haul and deliver sand,

stone, and other construction materials for the Silvi entities.

45.     In exchange for hauling materials, the Silvi entities paid H. Liekda

based on fuel costs, materials hauled, and distance hauled.

46.     The Independent Hauler Agreement required H. Liedka,

"Independent Contractor," to obtain certain insurance to cover Riverside

Construction Materials, Inc., its affiliated entities, and others (collectively,

"Silvi"):

> VI. INSURANCE: Independent Contractor shall maintain, and cause any subcontractor it retains for purposes of work under this agreement to maintain, at their sole expense, the following insurance at all times while performing services for Silvi: 1) Commercial General Liability Coverage including Products/Completed Operations - $1,000,000 per occurrence, $2,000,000 general aggregate and $2,000,000 Products/Completed Operations Aggregate; 2) Commercial Automobile Liability Coverage $1,000,000 Per Accident Combined Single Limit Including Non-Owned & Hired Auto Liability; and 2) Workers['']

Compensation Coverage and Employers Liability Insurance with work-
ers compensation coverage to be at statutory limits. The above policies
shall be maintained with insurance companies lawfully authorized to
do business on an admitted basis in the jurisdiction where the Independ-
ent Contractor's services are performed. Independent Contractor shall
name, and require its Subcontractors to name, Silvi, as well as their
agents, employees, representatives, officers, directors, stockholders,
members, managers, and parent, subsidiary and affiliated companies,
including but not limited to Gibraltar Rock, Inc., and Constructural Dy-
namics Inc., as additional insureds [hereinafter "Additional Insureds"-
with respect to all of the above policies with the exception of Workers'
Compensation. Such additional insurance shall be in the form of ISO
CG 20 10 10 01 and ISO CG 20 37 10 01, or equivalent coverage for
ongoing and completed operations. The coverage offered to the Addi-
tional Insureds shall be primary coverage to any other coverage main-
tained by the Additional Insureds and shall not permit or require such
other coverage to contribute to the payment of any loss. Independent
Contractor hereby waives, and shall cause it subcontractors to waive,
any claim against Additional Insureds by way of subrogation or other-
wise and shall cause its insurers and subcontractor's insurers to provide
the same waiver, for any and all losses covered by any policy at 2of
insurance outlined in this agreement. The amount of coverage set forth
above shall not be construed to be a limitation of the liabiltiy on the part
of the Independent Contractor or its subcontractors. Prior to the com-
mencement of work and/or payment, the Independent Contractor shall
file Certificates of Insurance with Silvi showing the policies, limits, and
coverages required under these provisions for both itself and its sub-
contractors. Furthermore, Independent Contractor shall provide an up-
dated Certificate of Insurance for Silvi upon request.

Ex. C., at 2.

47.    The Independent Hauler Agreement also required H. Liedka to defend

and indemnify Plaintiffs for any claims, including claims allegedly wholly or

partly caused by Plaintiffs, among other "Indemnified Parties":

VIII. INDEMNIFICATION: To the fullest extent permitted by law, In-
dependent Contractor agrees, and will cause its subcontractors

(collectively referred to herein as "Indemnitors") to agree, to indemnify, hold harmless and defend the Silvi [entities], and their agents, employees representatives, officers, directors, stockholders, members, managers and parent, subsidiary and affiliated companies, including but not limited to Constructural Dynamics Inc., Sil-Kemp Concrete Inc, Silvi Concrete of Brick, Inc., Penn Jersey Certified Concrete, Inc., Sil-Crate, Inc., Silvi of Chester County, Sil-Con, Inc., ALTA Industrial Properties, Inc., Riverside Construction Materials, and Riverside industrial Complex, Inc. (the "Indemnified Parties") from and against any and all claims for loss, damage or expense for which the Indemnified Parties may be held liable by reason of injury or harm (including death) to any person (including Indemnitors' employees), damage to any property of whatsoever kind or nature or loss, fine and/or penalty of any kind arising out of or in any manner connected with the services Independent Contractor or Indepdenent Contractor's employees, representatives, subsidiaries, affiliates or subcontractors provided, or failed to provide, under this agreement, even for, and if caused in whole or in part by, any act, omission, negligence or strict liability of the Indemnified Parties. It is expressed the understood and agreed that the indemnity and defense contained in this paragraph covers claims by Indemnitors' employees and Indemnitors expressly waive any defense to this indemnification obligation which may arise under the Workers Compensation Act of any State. In addition, Indemnitors shall indemnify the Indemnified Parties against any claim which may potentially give rise to indemnification of the Indemnified Parties, even if such claim may be later proven false, fraudulent or groundless and even if such claim alleges that the Indemnified Parties are wholly or partially at fault or strictly liable for causing the loss. If Indemnification for the Indemnified Parties' sole negligence is expressly prohibited by law, such defense shall continue until it is conclusively established by a court of competent jurisdiction that: 1) the Indemnified Parties are solely liable for causing the bodily injury or property damage alleged; and 2) that neither Indemnitor[s], nor [their] employees, nor anyone for whom Indemnitors may be liable, is liable for causing any part of the bodily injury or property damage for which defense and indemnification is sought.

Ex. C., at 3.

48.     According to the complaints in the Underlying Actions, at the time of the motor vehicle accident described in the Underlying Actions, H. Liedka was performing within its scope of work under the Independent Hauler Agreement. Ex. A. ¶¶ 36-42; Ex. B. ¶ 31.

### Plaintiffs are insured under the NJMCommercial Auto Policy.

49.     Plaintiffs obtained a copy of the New Jersey Re-Insurance Commercial Auto Policy issued to H. Liedka ("NJM Auto Policy"). A copy of the NJM Auto Policy, with insurance-premium information redacted, is **Exhibit "D"** and is incorporated under Fed. R. Civ. P. 10(c).

50.     The New Jersey Re-Insurance Business Auto Policy declarations pages list the coverages that the Policy provides by using numbers to denote the classes of autos to which coverages apply. Ex. D., at 5.

51.     The New Jersey Re-Insurance Business Auto Policy provides $1,000,000 in covered autos liability for covered autos symbols 7, 8, and 9. Ex. D., at 5.

52.     The New Jersey Re-Insurance Business Auto Policy defines symbol 7 as "autos" specifically described in Item Three of the Declarations and for which a premium is shown. Ex. D., at 61.

53.     The dump truck operated by Baez was a Mack GU7 dump truck with VIN #1M2AX07C2FM023440.

12

54.     The 2015 Mack GU7 dump truck with VIN #1M2AX07C2FM023440

is Covered Auto No. 10 on Item Three of the Declarations. Ex. D., at 10.

55.     A premium is shown (redacted) for Covered Auto No. 10. Ex. D., at

10.

56.     The New Jersey Re-Insurance Business Auto Policy defines "auto" to

include land motor vehicles. Ex. D., at 70.

57.     A dump truck is a land motor vehicle.

58.     Thus, the subject dump truck is a specifically described "auto" under

the New Jersey Re-Insurance Business Auto Policy.

59.     The NJM Auto Policy provides business auto coverage on Form CA

00 01 (11/20), which provides liability insurance coverage as follows:

### SECTION II – COVERED AUTOS LIABILITY COVERAGE

#### A. Coverage

We will pay all sums an "insured" must pay as damages because
of "bodily injury" or "property damage" to which this insurance
applies, caused by an "accident" and resulting from the owner-
ship, maintenance or use of a covered "auto".

\* \* \*

We have the right and duty to defend any "insured" against a
"suit" asking for such damages . . . . However, we have no duty
to defend any "insured" against a "suit" seeking damages for
"bodily injury" or "property damage" . . . to which this insurance
does not apply. We may investigate and settle any claim or "suit"
as we consider appropriate. Our duty to defend or settle ends

when the Covered Autos Liabiltiy Coverage Limit of insurance has been exhausted by payment of judgments or settlements.

### 1.    Who Is An Insured

The following are "insureds":

**a.**    You for any covered "auto".

**b.**    Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

\* \* \*

**c.**    Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

Ex. D., at 62-63

60.    The NJM Auto Policy provides certain coverage assumed under a contract, as follows:

### B. Exclusions

This insurance does not apply to any of the following:

### 2. Contractual

Liabiltiy assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.**    That the "insured" would have in the absence of the contract or agreement.

Ex. D., at 63-64.

14

61.    The NJM Auto Policy includes an endorsement, Additional Insured

By Written Contract or Written Agreement, which modifies business auto coverage

to include as additional insureds any entity for which H. Liedtka agreed to obtain

insurance coverage in a written contract or agreement:

> **I. SECTION II – COVERED AUTOS LIABILITY COVERAGE**, Paragraph **A.1 Who Is an Insured**, is amended to include as an additional insured:
>
> Any person or organization who is required to be named as an additional insured for liability coverage under a written contract or written agreement between you and that person or organization, so long as the written contract or written agreement was signed by you prior to any "accident" or "loss" resulting in "bodily injury" or "property damage" arising from the ownership, maintenance or use of a covered "auto" and only to the extent that person qualifies as an insured under the **WHO IS AN INSURED** provision contained in **Section II** of the policy. However this definition does not provide liability coverage for bodily injury or property damage arising out of the sole negligence of such additional insured for its own acts or omissions or those of its employees or anyone else acting on its behalf.

Ex. D., at 32.

62.    That Endorsement extends additional-insured coverage to any person

or organization whom H. Liedtka was required to add as an additional insured

under a written contract or agreement.

63.    That Endorsement provides insurance coverage to the additional

insureds for, among other things, "bodily injury" caused by H. Liedtka's acts or

omissions or the acts or omissions of those acting on behalf of H. Liedtka. Ex. D.,

at 32.

15

64.     The NJM Auto Policy also includes Endorsement CA 04 49

(11/16) Primary And Noncontributory – Other Insurance Condition:

> **A.**     The following is added to the **Other Insurance** Condition in the Business Auto Coverage Form and the **Other Insurance – Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form and supersedes any provision to the contrary.
>
> This Coverage Form's Covered Autos Liability Coverage is primary to and will not seek contribution from any other insurance available to an "insured" under your policy provided that:
>
>> **1.** Such "insured" is a Named Insured under such other insurance; and
>>
>> **2.** You have agreed in writing that this insurance would be primary and would not seek contribution from any other insurance available to such "insured".

Ex. D., at 78.

65.     Plaintiffs are named insureds on other insurance policies.

## New Jersey Re-Insurance ignores Plaintiffs' demands that it defend and indemnify Plaintiffs in the Underlying Actions.

66.     The *Haines a*ction was filed in or about February 2025.

67.      Plaintiffs, however, were not formally added as defendants in the

*Haines* Action until December 1, 2025.

68.     The *Selman* Action was filed in or about May 2025.

69.     Plaintiffs, however, were not formally added as defendants in the

*Selman* action until December 16, 2025.

70.     At some time in November 2025, Plaintiffs became aware that they would be added as defendants in the Underlying Actions.

71.     Accordingly, before being formally added as defendants and on or about November 18, 2025, Plaintiffs, through counsel, tendered their defense in the Underlying Actions to New Jersey Re-Insurance through H. Liedtka.

72.     Plaintiffs received no response to their initial correspondence.

73.     On or about December 3, 2025, Plaintiffs again demanded that New Jersey Re-Insurance and H. Liedtka defend and indemnify them.

74.     Plaintiffs received no response to this second demand.

75.     On or about December 15, 2025, Plaintiffs again demanded that New Jersey Re-Insurance and H. Liedtka defend and indemnify them.

76.     Plaintiffs again received no response to this third demand.

77.     On or about December 24, 2025, Plaintiffs again demanded that New Jersey Re-Insurance and H. Liedtka defend and indemnify them.

78.     Plaintiffs finally received a response to this fourth demand for defense and indemnity, but only that the demand was being reviewed by New Jersey Re-Insurance.

79.     Frustrated and out of any other options, Plaintiffs were left with no choice but to sue to vindicate their rights.

17

## COUNT I
## DECLARATORY JUDGMENT

80.     Plaintiffs incorporate by reference the preceding paragraphs of their Complaint under Fed. R. Civ. P. 10(c).

81.     This Court may enter a declaratory judgment under 28 U.S.C. § 2201.

82.     An actual case or controversy exists between Plaintiffs and New Jersey Re-Insurance.

83.     The claims against Plaintiffs in the Underlying Actions are claims for damages because of "bodily injury" caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto" as defined by the NJM Auto Policy.

84.     Plaintiffs are insureds under the NJM Auto Policy, because it is alleged that they are liable for the conduct of an "insured," H. Liedtka.

85.     Plaintiffs are insureds under the NJM Auto Policy, because it is alleged that they are liable for the conduct of an "insured," Baez.

86.     H. Liedtka was obligated to name Plaintiffs as additional insureds on a primary and non-contributory basis under the Independent Hauler Agreement.

87.     The Independent Hauler Agreement is a written contract or agreement that was signed by H. Liedtka before the accident giving rise to the Underlying Actions.

18

88.     Plaintiffs are additional insureds under the NJM Auto Policy's Additional Insured Endorsement.

89.     Under Endorsement CA 04 49 (11/16), the NJM Auto Policy provides primary and noncontributory coverage to Plaintiffs.

90.     New Jersey Re-Insurance must defend and indemnify Plaintiffs in the Underlying Actions under the NJM Auto Policy.

91.     New Jersey Re-Insurance's failure to defend and indemnify Plaintiffs in the Underlying Actions is a breach of its obligations under the NJM Auto Policy.

**WHEREFORE**, Plaintiffs demand judgment in their favor, and request that the Court enter a declaratory judgment that:

(1) Defendant must defend Plaintiffs in the Underlying Action.

(2) Defendant must indemnify Plaintiffs in the Underlying Action.

(3) Defendant must reimburse Plaintiffs for all costs and fees incurred by Plaintiffs in defending the Underlying Action.

(4) Defendant must reimburse Plaintiffs for all costs and attorneys' fees incurred in prosecuting this action.

(5) Awards other such relief as may be just.

## COUNT II
## BREACH OF CONTRACT

92.     Plaintiffs incorporate by reference the preceding paragraphs of their
Complaint under Fed. R. Civ. P. 10(c).

93.     The NJM Auto Policy is an insurance contract between New Jersey
Re-Insurance and its named insured, H. Liedtka.

94.     Because Plaintiffs qualify as "insureds" under the NJM Auto Policy's
omnibus clause, Plaintiffs are intended third-party beneficiaries of the NJM Auto
Policy.

95.     Because Plaintiffs qualify as additional insureds under the NJM Auto
Policy's Additional Insured endorsement, Plaintiffs are intended third-party
beneficiaries of th NJM Auto Policy.

96.     Moreover, New Jersey Re-Insurance must provide primary and
noncontributory insurance coverage to Plaintiffs.

97.     Plaintiffs gave timely and appropriate notice to New Jersey Re-
Insurance of their claim for coverage.

98.     By refusing to defend or indemnify Plaintiffs, New Jersey Re-
Insurance has breached the NJM Auto Policy.

99.     Plaintiffs have been damaged by New Jersey Re-Insurance's breach of
the NJM Auto Policy, because they have incurred damages in the form of
attorneys' fees and costs spent to defend themselves in the Underlying Actions and

20

in the form of attorneys' fees and costs spent to obtain coverage and prosecute this action.

100.   New Jersey Re-Insurance's breach of the NJM Auto Policy breached its implied contractual duty of good faith.

**WHEREFORE**, Plaintiffs demand judgment in their favor together with costs against Defendant, in the form of specific performance, actual, consequential, statutory, and punitive damages including interest in an unliquidated amount in excess of $75,000, together with costs, prejudgment and post-judgment interest, delay damages, attorneys' fees and other such relief as may be just.

## COUNT III
## BAD FAITH

101.   Plaintiffs incorporate by reference the preceding paragraphs of their Complaint under Fed. R. Civ. P. 10(c).

102.   New Jersey Re-Insurance lacks a reasonable basis for denying coverage to Plaintiffs under the NJM Auto Policy.

103.   Upon information and belief, New Jersey Re-Insurance recklessly disregarded the lack of a reasonable basis for denying coverage to Plaintiffs.

104.   Upon information and belief, New Jersey Re-Insurance knew that it lacked a reasonable basis for denying coverage to Plaintiffs.

105.   Plaintiffs' right to coverage under the NJM Auto Policy is not fairly debatable.

21

106.   Because of New Jersey Re-Insurance's wrongful denial of coverage, Plaintiffs have suffered actual damages in the form of costs and attorneys' fees expended in defending the Underlying Actions and in prosecuting this action.

107.   Because of New Jersey Re-Insurance's wrongful denial of coverage, Plaintiffs may suffer consequential damages in an amount as yet unknown.

**WHEREFORE**, Plaintiffs demand judgment in their favor together with costs against Defendant, in the form of actual, consequential, statutory, and punitive damages including interest in an unliquidated amount in excess of $75,000, together with costs, prejudgment and post-judgment interest, delay damages, attorneys' fees and other such relief as may be just.

Respectfully submitted,

**FOWLER HIRTZEL MCNULTY & SPAULDING, LLC**

By: */s/ Matthew D. Vodzak*

Date: January 7, 2026

JOSEPH R. FOWLER, ESQUIRE
PA ID #: 55661
MATTHEW D. VODZAK, ESQUIRE
PA ID #: 309713
SAMUEL A. GARSON, ESQUIRE
PA ID #: 324340
Fowler, Hirtzel, McNulty & Spaulding,
LLC
Three Logan Square
1717 Arch Street, Suite 1310
Philadelphia, PA 19103
P: 215.789.4848
E: jfowler@fhmslaw.com
E: mvodzak@fhmslaw.com
E: sgarson@fhmslaw.com
*Attorneys for Plaintiffs*